**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CARLA McLAURIN and JAZMON WATSON,<br>Plaintiffs,<br>v.<br>SAMSIC AIRPORT AMERICA, LLC,<br>Defendant. | NO. 1:25-CV-09783<br>Judge Edmond E. Chang |

**MEMORANDUM OPINION AND ORDER**

In this employment-discrimination case, the Court entered a default judgment against Samsic Airport America after the company failed to respond to the complaint. R. 20, Default J.[1] Samsic moves to set aside the default judgment under Civil Rule 60(b). R. 27, Def.'s Mot. The motion is granted—though barely—because there was good cause for the default, Samsic took quick action when it learned of the suit, and Samsic has potentially meritorious defenses to the complaint. Because Carla McLaurin and Jazmon Watson incurred costs and attorneys' fees in moving for default judgment, Samsic is also ordered to pay those costs and fees as a precondition to vacating the judgment in the interests of justice under Rule 60(b).

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number. This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331.

## I. Background

McLaurin and Watson have been in a romantic relationship since November 2021. R. 35, Pls.' Resp. Br. at 2. In their complaint, McLaurin and Watson allege that they started working for Samsic as baggage handlers in March 2022. R. 1, Compl. ¶ 12. In May 2023, a new manager, Donya Young, was hired. *Id.* ¶ 14. Young (who is White) allegedly said to McLaurin and Watson (who are both Black), "I've heard a lot about you and I am here to catch a monkey by its toe." *Id.* ¶¶ 8, 14. Over the next few months, McLaurin and Watson say that they were treated differently and given more work than other, non-Black employees. *Id.* ¶¶ 15–18. McLaurin and Watson's coworkers also made insensitive or outright hateful race-based comments to them. *Id.* ¶¶ 19–20. McLaurin and Watson say that they complained to Young and Christian Uruchima, another manager, about their unequal treatment several times in August and September 2023, expressly raising the issue of race. *Id.* ¶¶ 21–22. When their complaints went unaddressed, McLaurin and Watson complained to upper management in September 2023. *Id.* ¶ 23.

On October 3, 2023, Watson alleges that Young called him on the phone and told him that she had received a complaint that he was threatening another employee. Compl. ¶ 24. Watson says that he was not threatening anyone; he was simply working. *Id.* ¶¶ 24–25. Young told Watson that she would come down to the bag room to speak with him, and Watson continued working. *Id.* ¶ 24. Later that day, Young fired McLaurin and Watson purportedly because of their "attitudes." *Id.* ¶ 26.

McLaurin and Watson filed charges of discrimination with the Equal Employment Opportunity Commission. R. 1, Compl. Exh. A, McLaurin EEOC Charge; R. 1, Compl. Exh. B, Watson EEOC Charge. The Commission determined that the evidence established reasonable cause to believe that Samsic fired McLaurin and Watson because of their race and because they engaged in protected activity. R. 1, Compl. Exh. C, McLaurin EEOC Determination; R. 1, Compl. Exh. D, Watson EEOC Determination. The Commission issued them both Right to Sue letters. R. 1, Compl. Exh. E, McLaurin Letter; R. 1, Compl. Exh. F, Watson Letter. So on August 15, 2025, McLaurin and Watson filed a complaint against Samsic, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981. Compl. ¶¶ 28–83.

Samsic did not file a response to the complaint. R. 13, 10/14/2025 Minute Order. On October 14, 2025, the Court deemed Samsic to be in default and ordered McLaurin and Watson to file a motion for default judgment. *Id.* They did. R. 17, Pls.' Default J. Mot. Samsic still did not respond. So on November 19, 2025, the Court granted the motion, R. 19, 11/19/2025 Minute Order, and entered default judgment against Samsic, Default J.

Six days later, on November 25, 2025, Samsic moved to set aside the default judgment. Def.'s Mot. Samsic offers the following explanation for its failure to respond to the complaint: Samsic's registered agent, CT Corporation System, was served with a copy of the complaint on September 9, 2025. Pls.' Default J. Mot. at 1; R. 8, Proof of Service. Cooper Law Firm LLC was the designated point of contact between CT

Corporation and Samsic. Def.'s Mot. at 4; R. 42-1, Def.'s Exh. A, Boone Decl. ¶ 3. So CT Corporation would routinely mail notice of lawsuits filed against Samsic to Cooper, and Cooper would forward the mail to Samsic's Finance Manager, Julie Jiang. R. 42, Def.'s Suppl. Br. at 1; Boone Decl. ¶¶ 3, 10. Here, it appears that CT Corporation forwarded the complaint to Cooper on September 9, 2025. *See* R. 27-9, Def.'s Exh. 2-B, Boone Email Attachments at 4.[2]

But the Cooper law firm had been experiencing difficulties receiving its mail since January 2025, when the firm moved offices. Def.'s Suppl. Br. at 1–2; Boone Decl. ¶¶ 4–5. After the move, Cooper's Office Manager, Selina Boone, was informed that the firm's new address did not exist in the U.S. Postal Service system, so the firm's mail was returned to sender or sent to the firm's old address. Boone Decl. ¶¶ 2, 5. After submitting multiple change-of-address requests, Cooper began to receive some mail at the new address in March 2025, so Boone thought that the problem had been resolved. *Id.* ¶¶ 6–7. But over time, Boone realized that the law firm was still experiencing mail-delivery issues. *Id.* ¶ 7. For instance, the firm would receive mail in irregular quantities and frequencies. *Id.* And sometimes the firm's mail was delivered to other suites in the building, and then not given to the firm in a timely manner or at all. *Id.* ¶ 8.

Because of Cooper's mail-delivery issues, Boone did not become aware of this lawsuit until November 5, 2025, when the firm received a letter from plaintiffs'

---

[2]This citation is to the PDF page number of the exhibit.

counsel dated October 24, 2025. Def.'s Suppl. Br. at 2; Boone Decl. ¶¶ 11–13. Boone has no recollection of receiving any earlier mail about the suit. Def.'s Suppl. Br. at 2; Boone Decl. ¶ 11. And because it is Boone's job to check the law firm's mail, she does not believe anyone else at the firm would have received a copy of the complaint from CT Corporation without her knowledge. Boone Decl. ¶ 11. Boone believes that any mail from CT Corporation sent between August and October 2025 must have been misdelivered or lost in the mail. *Id.* ¶ 13.

When Boone received the letter from plaintiffs' counsel on November 5, she immediately scanned it and emailed the scan to Julie Jiang. Def.'s Suppl. Br. at 2; Boone Decl. ¶ 12. The letter described this suit and the Court's October 14 default order. Def.'s Mot. at 4–5; R. 17, Default J. Mot. Exh. 4, 10/24/2025 Letter. But because Boone had not seen any prior mail about the suit, and she did not realize that the firm was still experiencing mail-delivery issues, she assumed that the letter contained the initial notice about a new lawsuit. Boone Decl. ¶¶ 12–13. So in her email to Jiang, Boone wrote that attached was "a *new lawsuit* [Cooper was] served with yesterday." Def.'s Mot. at 4; R. 27-8, Def.'s Exh. 2-A, Boone Email (emphasis added).

Because of the email description, and because Jiang is not an attorney, she did not realize that the suit required urgent action. Def.'s Mot. at 5; R. 27-7, Def.'s Exh. 2, Jiang Decl. ¶¶ 2–4. Jiang also received in the mail a physical copy of plaintiffs' counsel's October 24 letter at some point (likely November 10, 2025, when Jiang returned from a business trip). Def.'s Mot. at 5; Jiang Decl. ¶ 8. But again, because the envelope did not indicate that it contained urgent legal documents, Jiang did not

immediately open the letter or realize urgent action was required. Def.'s Mot. at 5; Jiang Decl. ¶ 8; *see* R. 27-10, Def.'s Exh. 2-C, Physical Mail.

On November 14, 2025, Stefano Sciotti, Vice President of International Operations at Samsic's parent company in France, notified Carlos Ibarra, Samsic's Country Manager, about the lawsuit. Def.'s Mot. at 5; R. 27-1, Def.'s Exh. 1, Ibarra Decl. ¶ 4. Sciotti learned about the suit from Simon Chapin, an attorney in France who also works for Samsic's parent company, who was copied on the November 5 email from Boone to Jiang. Def.'s Mot. at 5; Ibarra Decl. ¶¶ 4–5; Boone Email. Ibarra immediately reached out to Jiang about the lawsuit. Def.'s Mot. at 5; Jiang Decl. ¶ 3. Jiang searched her communications and realized that she had received the letter from plaintiffs' counsel in both the email from Boone and the physical mail. Def.'s Mot. at 5; Jiang Decl. ¶ 4. But because she had not examined those communications closely, she did not have actual notice of the suit or the default order until that day, November 14. Def.'s Mot. at 5; Jiang Decl. ¶ 3.

That same day, Samsic reached out to potential counsel about representation. Def.'s Mot. at 7; R. 30, Def.'s Exh. 6, Murphy Decl. ¶ 2. By November 19, 2025, Samsic had retained defense counsel, investigated the reasons for the default, and began gathering evidence for the case. Def.'s Mot. at 7; Murphy Decl. ¶¶ 5–8. Defense counsel contacted plaintiffs' counsel to inquire whether he would oppose a motion to set aside the default. Def.'s Mot. at 7; Murphy Decl. ¶ 7. But unbeknownst to defense counsel, the Court had entered the default judgment earlier that day. Def.'s Mot. at 7; Murphy Decl. ¶ 9. The next day, after learning of the default judgment from

plaintiffs' counsel, defense counsel entered their appearances and filed a notice of intent to file a motion to set aside the judgment. Def.'s Mot. at 8; Murphy Decl. ¶ 11; R. 24, Notice of Intent. Samsic took five days to investigate McLaurin and Watson's claims and gather evidence, and then filed the motion on November 25, 2026. Def.'s Mot. at 8; Murphy Decl. ¶ 12.

## II. Legal Standard

Because the Court entered a final judgment against Samsic, *see* Default J., the applicable rule is Civil Rule 60(b). The rule allows a district court "[o]n motion and just terms" to vacate a final judgment for various reasons including, as relevant here, "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). To set aside a default judgment entered against it, a party "must show (1) good cause for the default; (2) quick action to correct it; and (3) a meritorious defense to the complaint." *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 630 (7th Cir. 2009) (cleaned up).[3]

These elements are identical for motions to vacate the entry of default under Civil Rule 55(c) and motions to set aside default judgments under Civil Rule 60(b). *Jones v. Phipps*, 39 F.3d 158, 162 (7th Cir. 1994). But "respect for the finality of judgments results in the application of the test under Rule 60(b) circumstances—where a default *judgment* has been entered—to be much more limited and stringent." *Id.* (emphasis in original). At the same time, courts in this circuit avoid resolving cases by

[3]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

default judgment when the merits can be reached instead. *Cracco*, 559 F.3d at 631. Above all, district courts are given "considerable latitude" in deciding whether to vacate a default judgment. *Wehrs v. Wells*, 688 F.3d 886, 890 (7th Cir. 2012).

## III. Analysis

### A. Motion to Set Aside Default Judgment

#### 1. Good Cause

"Good cause" for setting aside a default judgment can include "excusable neglect," which encompasses "both simple, faultless omissions to act and, more commonly, omissions caused by carelessness." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993). According to the Seventh Circuit, excusable neglect under Civil Rule 60(b) "requires something more compelling than ordinary lapses of diligence or simple neglect to justify disturbing a default judgment." *Phipps*, 39 F.3d at 162.

Here, Samsic argues that the breakdown in communications between CT Corporation, the Cooper law firm, and Samsic constitutes excusable neglect. Def.'s Mot. at 4–7. McLaurin and Watson respond that Samsic cannot escape the blame for Cooper merely because the law firm is a non-party. Pls.' Resp. Br. at 13. The Plaintiffs are correct that "an agent's acts and omissions usually are attributed to the principal," such that Samsic cannot disclaim responsibility for Cooper's mistakes. *See In re Canopy Financial, Inc.*, 708 F.3d 934, 936 (7th Cir. 2013). But an agent's errors may constitute excusable neglect for default under certain circumstances. *See id.* at 936–37. For example, if a defendant never responded to a lawsuit because the summons

and complaint were "lost in transit" by the defendant's agent, then "whether the neglect is excusable could depend on what kind of service the agent promised to provide." *Id.* at 937. If the agent offered competent and reliable services, such that the mail-delivery issues were unforeseeable, then those issues would likely be considered excusable neglect. *See id.* Whereas if the opposite were true, foreseeable mail-delivery issues may not constitute excusable neglect. *Id.* In this analysis, the Seventh Circuit has also placed heavy weight on whether the defendant acted with willfulness; absent willfulness (that is, when the defendant did not knowingly ignore a lawsuit), the Seventh Circuit has found excusable neglect. *See Cracco*, 559 F.3d at 631; *C.K.S. Eng'rs, Inc. v. White Mt. Gypsum Co.*, 726 F.2d 1202, 1205–06 (7th Cir. 1984).

The facts here present a close call. On the one hand, the Cooper law firm experienced inexplicable and ongoing mail-delivery issues, which ultimately resulted in the firm failing to receive notice of this suit until November 5. Def.'s Mot. at 4–5. It appears that Boone made genuine, repeated efforts to resolve the mail-delivery issues (albeit to no avail). And because Cooper had not received earlier notice about the suit, Boone's mistaken belief—communicated to Jiang by email—that the October 24 letter was about a "new" suit was somewhat reasonable. Def.'s Mot. at 4; Boone Email. Importantly, there is also no evidence that *Samsic* was aware of Cooper's mail-delivery issues, such that Samsic should have known that Cooper's notice services were unreliable. These facts suggest that Cooper's mail-delivery issues, and Boone's subsequent mischaracterization of the suit as new, constitute excusable neglect. *See In re Canopy*, 708 F.3d at 937.

On the other hand, it is unclear why Samsic continued to use Cooper as the go-between with CT Corporation—a crucial role, as demonstrated by the facts here—when the Cooper law firm had not done substantive legal work for Samsic since 2024, when the firm changed ownership. *See* Def.'s Suppl. Br. at 1; Boone Decl. ¶ 3. Nor is it clear why Samsic continued to receive service from CT Corporation by *physical mail* when it could have received service electronically. *See* R. 44, Pls.' Resp. to Def.'s Suppl. Br. at 2–3. On top of that, given Cooper's role as the go-between with CT Corporation, the firm should have notified Samsic (and any other similarly situated client) of its mail-delivery issues. *See id.* So there is also a reasonable argument that Samsic failed to take reasonable precautions to prevent the breakdown in communication between CT Corporation and Cooper, and that Cooper (Samsic's agent) also dropped the ball.

On Samsic's own missteps, Samsic contends that Finance Manager Julie Jiang did not realize that the October 24 letter required immediate attention, and that failure was due to her lack of legal training and Boone's mischaracterization of the letter as new. Def.'s Mot. at 5. Given this context, it may have been reasonable for Jiang to fail to immediately realize the urgency of the letter. But because she was the designated recipient of *legal* (among other types of) correspondence for Samsic, Boone Decl. ¶ 10, Jiang should have at least opened the letter and examined its contents. If she had done so, then she probably would have realized the urgency of the matter. And even if after examining the letter Jiang still believed that Samsic was facing a new lawsuit—rather than a default judgment—she should have acted promptly to enlist

a lawyer to begin preparing a response to the complaint. What's more, if Jiang could not appreciate the significance of the documents as a non-attorney, then perhaps it was unreasonable for Samsic to designate Jiang as the recipient of legal correspondence in the first place. *See In re Canopy*, 708 F.3d at 937. Samsic also does not address the fact that Boone also copied Chapin, an attorney, on her November 5 email to Jiang. Def.'s Mot. at 5; Ibarra Decl. ¶¶ 4–5; Boone Email. Of course, Chapin works for Samsic's parent company, not for Samsic itself, but it is unexplained why Chapin—an attorney—did not notify anyone at Samsic about the suit earlier. *See generally* Def.'s Mot.; Def.'s Suppl. Br. So again, although much of the neglect falls on Cooper's head, Samsic played a neglectful role too.

Samsic also contends that it lacked notice about the suit because it did not receive any earlier correspondence about McLaurin and Watson's charges from the Equal Employment Opportunity Commission. Def.'s Mot. at 6–7. The charges did not list Samsic's full legal name, nor the correct address; for Samsic's street number, the charges listed 9817 instead of 9815. *Id.*; McLaurin EEOC Charge; Watson EEOC Charge; Ibarra Decl. ¶ 7. And even if the street number had been correct, that address was outdated—Samsic had moved to a new address in November 2023, about one month after McLaurin and Watson were fired and before they filed their charges. Def.'s Mot. at 6–7; Ibarra Decl. ¶ 7; McLaurin EEOC Charge (filed December 2023); Watson EEOC Charge (filed January 2024). The Commission used this incorrect, outdated address on its determination and Right to Sue letters. Def.'s Mot. at 6–7; Ibarra Decl. ¶ 8; McLaurin EEOC Determination; Watson EEOC Determination; McLaurin

Letter; Watson Letter. The Commission also used a generic email address for Samsic's French parent company on McLaurin's Right to Sue letter. Ibarra Decl. ¶ 9; McLaurin Letter. But Ibarra says that Samsic "has no record of receiving any communications from the" Commission. Def.'s Mot. at 6–7; Ibarra Decl. ¶ 8.

The Court is skeptical that the Postal Service would not make diligent efforts to deliver mail to Samsic despite the minor typographical error in the street number (9817 versus 9815). And even if the mail was delivered to an old address, presumably Samsic had put in a request for the Postal Service to forward mail to its new address. Also, even a general corporate email account (that is, the account for the French parent company) presumably is regularly checked, and that email account was copied on the McLaurin letter. If Samsic did not take these reasonable steps to ensure that it received mail and email correspondence, then that weights against excusing the neglect. Carlos Ibarra's declaration is sparse on this issue. He does not detail how, or with whom, he checked to see if Samsic had received any communications from the Commission. *See* Ibarra Decl. ¶¶ 8–9. For instance, Ibarra does not specify whether he asked a records custodian at Samsic to search for any correspondence from the Commission. So again, although there are some facts that suggest it was excusable for Samsic not to have received notice of the charges, there are also facts that do not support that finding.[4]

[4] If McLaurin and Watson have evidence that Samsic did, in fact, receive notice of their charges or some other communication from the Commission, they are authorized to move to reconsider this decision.

Ultimately, although it is a close call, the Court concludes that Samsic has shown excusable neglect. The key is the Cooper law firm's mail-delivery problems, of which Samsic was unaware. That means that Samsic did not know for months that it had been sued, nor did Samsic receive immediate notice that the Court had entered default against it. And when Samsic finally received plaintiffs' counsel's letter on November 5, the mischaracterization of the letter by Boone, coupled with Jiang's lack of legal expertise, meant that Samsic still did not immediately appreciate the urgency of the matter. Most of these mistakes were not within Samsic's control or reasonably foreseeable to Samsic. And although Samsic could have taken better precautions to prevent these mistakes, there is no evidence that it knowingly ignored this suit or willfully chose not to respond to the complaint. So the breakdown in communications between CT Corporation, Cooper, and Samsic's employees constitutes excusable neglect, and thus good cause to set aside the default judgment. *See In re Canopy*, 708 F.3d at 936–37 (describing how there would be excusable neglect if relevant documents simply never reached the defendant's agent); *Cracco*, 559 F.3d at 629, 631 (concluding that the defendant showed good cause when, although it "should have taken measures to ensure that service of process on its registered agent was forwarded to the appropriate employee"—rather than "employees who did not understand" the significance of the summons and complaint—"there is no evidence that it acted willfully when it failed to respond to" the complaint); *Coyote Logistics, LLC v. AMC Cargo Inc.*, 2017 WL 1862642, at *2 (N.D. Ill. May 9, 2017) (determining that the defendant showed good cause because its registered agent never informed the defendant of the

litigation); *Delgado v. I.C. Sys., Inc.*, 2020 WL 5253686, at *2 (N.D. Ill. Sep. 3, 2020) (same).

The cases on which McLaurin and Watson rely involve much worse defendant conduct. *See* Pls.' Resp. Br. at 12–13. In those cases, the defendants could not show excusable neglect because they knowingly ignored the case or failed to follow basic filing deadlines. *See Casio Comp. Co., Ltd. v. Noren*, 35 F. App'x 247, 250 (7th Cir. 2002); *Jack Gray Transp., Inc. v. Shaw*, 105 F.R.D. 485, 489 (N.D. Ill. 1984). That is a far cry from the extenuating circumstances in this case. Samsic has shown that it meets the good-cause element.

**2. Quick Action**

McLaurin and Watson do not dispute that Samsic took quick action once it learned of this suit. *See generally* Pls.' Resp. Br. Indeed, the same day that Ibarra and Jiang learned of the suit, they reached out to potential counsel about representation. Def.'s Mot. at 7; Murphy Decl. ¶ 2. Within five days—and only three business days—Samsic had retained defense counsel, who immediately contacted plaintiffs' counsel about moving to set aside the default. Def.'s Mot. at 7; Murphy Decl. ¶¶ 5, 7. After Samsic learned of the default judgment the next day, it took only five more days to gather evidence and file the motion to set aside the judgment. Def.'s Mot. at 8; Murphy Decl. ¶ 12. This is quick action sufficient to satisfy the second element. *See Cracco*, 559 F.3d at 631 (concluding that the plaintiff acted in timely fashion by filing its motion eight days after the default order was entered, which was the day it learned of the suit).

### 3. Meritorious Defense

Finally, Samsic must show that it has a potentially meritorious defense to McLaurin and Watson's claims. "A meritorious defense is not necessarily one which must, beyond a doubt, succeed in defeating a default judgment, but rather one which at least raises a serious question regarding the propriety of a default judgment and which is supported by a developed legal and factual basis." *Phipps*, 39 F.3d at 165. "[A] general denial of the complaint's allegations, without any factual support, is insufficient to state a meritorious defense." *Wehrs*, 688 F.3d at 891.

Here, Samsic claims that McLaurin and Watson were fired because they received multiple disciplinary write-ups and harassed other employees. Def.'s Mot. at 9–10; Ibarra Decl. ¶ 14. To substantiate this defense, Samsic provides written documentation of write-ups that McLaurin and Watson received for failing to properly handle baggage and come to work. Def.'s Mot. at 9; R. 27-4, Def.'s Exh. 1-C, McLaurin Write-Up; R. 27-5, Def.'s Exh. 1-D, Watson Write-Up; R. 27-6, Def.'s Exh. 1-E, Second McLaurin Write-Up. And Samsic presents contemporaneous emails from Samsic employees that reported they were harassed and threatened by Watson. Def.'s Mot. at 9–10; R. 27-2, Def.'s Exh. 1-A, March 2023 Henriquez Email; R. 27-3, Def.'s Exh. 1-B, April 2023 Henriquez Email. Samsic also presents more recent statements from those employees confirming that they were harassed by McLaurin and Watson. Def.'s Mot. at 9–10; R. 27-12, Def.'s Exh. 4, Henriquez Decl.; R. 27-13, Def.'s Exh. 5, Fajardo Email.

Taken together, this evidence shows that Samsic has a potentially meritorious defense to the complaint. Namely, Samsic presents significant evidence that it had legitimate, non-discriminatory and non-retaliatory reasons for firing McLaurin and Watson. Samsic also offers evidence—in the form of declarations from Samsic employees—that refute key factual allegations in the complaint. *See* Def.'s Mot. at 10; R. 27-11, Def.'s Exh. 3, Uruchima Decl.; R. 34, Def.'s Exh. 7, Elbert Decl. This further bolsters Samsic's potential defense.

McLaurin and Watson argue that there are "gaping holes" in Samsic's evidence that preclude it from raising a meritorious defense. Pls.' Resp. Br. at 15. For example, although Samsic presents McLaurin and Watson's write-ups for attendance and baggage issues, Samsic offers no evidence that they were written up for their alleged harassment of other employees. *See id.*; *see* McLaurin Write Up; Watson Write Up; Second McLaurin Write Up. And McLaurin and Watson note that most of the write-ups and allegations of harassment happened months before they were fired. *See* Pls.' Resp. Br. at 15; March 2023 Henriquez Email; April 2023 Henriquez Email; McLaurin Write Up (August 2023); Watson Write Up (August 2023); Second McLaurin Write Up (September 2023). Finally, Samsic offers no evidence to directly refute the complaint's allegations that McLaurin and Watson complained to Young that they were being treated differently because of their race. Pls.' Resp. Br. at 15.

To be sure, the defense evidence is far from complete in refuting the Plaintiffs' allegations. And McLaurin and Watson allege discriminatory conduct and reject the performance-problem accusations based on personal knowledge, which might very

well make this case highly resistant to summary judgment. But the Plaintiffs can make these arguments when litigating the merits of this case. For this vacatur motion, Samsic need not definitively prove that it can defeat McLaurin and Watson's claims. *Phipps*, 39 F.3d at 165. Samsic offers some factual support for its potential defense, and thus raises a sufficient question about the propriety of the default judgment in this case. *See Cracco*, 559 F.3d at 631. So Samsic meets the final element required under Civil Rule 60(b). Because Samsic has shown that it meets all three elements—although it just barely meets the good-cause element—the Court grants the motion to set aside the default judgment.

**B. Costs and Attorneys' Fees**

With Samsic's motion granted, the parties will go back to square one in this case. But McLaurin and Watson will have spent time and money reasonably moving for a default judgment that is now vacated. So McLaurin and Watson are actually in a *worse* position than if the default had never occurred.

Civil Rule 60(b) allows the Court to impose conditions on the vacatur of default judgment to avoid such an unjust outcome. Specifically, under the rule, the Court may grant relief from a default judgment "[o]n … just terms." Fed. R. Civ. P. 60(b). Thus, "conditions can be used to rectify any prejudice suffered by the nondefaulting party as a result of the default." *Bluegrass Marine Inc. v. Galena Rd. Gravel, Inc.*, 211 F.R.D. 356, 359 (S.D. Ill. 2002) (cleaned up). "The most common type of prejudice is the additional expense caused by the delay." *Id.* (cleaned up). So under Civil Rule 60(b), district courts "have ordered a defaulted defendant to pay the plaintiff's

costs associated with litigating the default as a precondition to vacating default." *Id.*; *see also Jones v. Petit*, 2013 WL 453467, at *34 (C.D. Ill. Feb. 6, 2013); *In re UAL Corp.*, 299 B.R. 509, 523 (N.D. Ill. 2003).

It is true that the Seventh Circuit has not expressly considered this type of precondition to vacaturs, but that is not surprising given the unlikelihood of the issue arising on appeal. And the circuits that have come across this issue have not objected to it. *See, e.g.*, *Thorpe v. Thorpe*, 364 F.2d 692, 695 (D.C. Cir. 1966) (describing how district courts may impose reasonable conditions on the vacatur of a default judgment under Rule 60(b), most commonly "that the defendant reimburse the plaintiff for costs—typically court costs and attorney's fees—incurred because of the default"); *Wokan v. Alladin Int'l, Inc.*, 485 F.2d 1232, 1234 (3d Cir. 1973) (same). Plus, the Seventh Circuit *has* held that "even where the drastic sanction of the entry of default is not warranted, an award of sanctions such as attorneys' fees may be." *Iconic Energy LLC v. Solar Permit Servs., Inc.*, 2018 WL 4520220, at *3 (N.D. Ill. Aug. 3, 2018) (citing *C.K.S. Eng'rs*, 726 F.2d at 1209); *see also Goat LLC v. Advanced Wholesale LLC*, 349 F.R.D. 318, 333 (E.D. Wis. 2025). "[T]he [C]ourt's inherent power and use of discretion also enables it to set aside default entries on various conditions," including requiring the defendant to pay costs and attorneys' fees. *Bluegrass Marine*, 211 F.R.D. at 359 (cleaned up); *Davis v. Coopers & Lybrand*, 1991 WL 172953, at *2 (N.D. Ill. Aug. 29, 1991); *Mellon Stuart Co. v. Rizzi's Year-Round Maint., Inc.*, 1988 WL 76966, at *2 (N.D. Ill. July 19, 1988).

Thus, the Court exercises its discretion under Civil Rule 60(b) to impose just conditions on the vacatur of default judgment. The default judgment is vacated on the condition that Samsic pay reasonable costs and attorneys' fees that McLaurin and Samson incurred to litigate the default-judgment motion.

## IV. Conclusion

Samsic's motion to set aside the default judgment, R. 27, is granted on the condition that Samsic pay the reasonable costs and attorneys' fees accrued by McLaurin and Watson to litigate the default-judgment motion. The parties shall confer on the reasonable costs and fees and file a status report by September 17, 2026. If the report says that an agreement was reached and payment was made, then the Court will vacate the judgment and the case will move forward. Given the false start in this case, the Court urges the parties to confer in full good faith to arrive at an agreement on costs and fees. Also, as explained earlier in the Opinion, this is the type of case that might not end at summary judgment, and the parties should engage in early settlement discussions to avoid the expense and risk of litigation. That is, of course, up to the parties, and the Court will reserve ultimate judgment if the case moves forward.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 4, 2026